IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OLGA TRUSOV,

Plaintiff,

v.

OREGON HEALTH & SCIENCE
UNIVERSITY, WAYNE MONFIES,
RUTH BEYER, JAMES A. CARLSON,
DANNY JACOBS, CHAD PAULSON,
STEVE ZIKA, STACY CHAMBERLAIN,
PRASHANT DUBEY, and DOES 1 and 2,

Defendants.

Case No. 3:23-cv-77-SI

OPINION AND ORDER

Brent H. Smith, BAUM SMITH LLC, PO Box 967, 808 Adams Avenue, La Grande, OR 97850.
Of Attorneys for Plaintiff.

Thomas R. Johnson, Brenda K. Baumgart, Alex Van Rysselberghe, and Alexandra C. Giza,
STOEL RIVES LLP, 760 SW Ninth Avenue, Suite 3000, Portland, OR 97205. Of Attorneys
for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Olga Trusov brings this lawsuit against her former employer Oregon Health &

Science University (OHSU), eight named individual Defendants who are or were members of

OHSU's Board of Directors (OHSU Board), and two unnamed individual (Doe) Defendants who

PAGE 1 – OPINION AND ORDER

are or were members of OHSU's Vaccine Exception Review Committee (VERC).[1] Ms. Trusov worked for OHSU as a Registered Nurse from August 2013 until OHSU terminated her employment on December 6, 2021. Ms. Trusov failed to comply with OHSU's COVID-19 vaccination policy, and OHSU denied her request for a religious accommodation that would have exempted her from OHSU's vaccination requirement.

In her First Amended Complaint (FAC), Ms. Trusov asserts two claims for money damages plus a separate request for declaratory relief. First, Ms. Trusov alleges that OHSU violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, by discriminating against her because of her religion. Second, Ms. Trusov alleges that the members of OHSU's Board and VERC violated her First Amendment right to freedom of religion, which is actionable under 42 U.S.C. § 1983. Finally, Ms. Trusov asks the Court to declare that OHSU's Board and VERC violated the Free Exercise Clause of the First Amendment. Defendants have moved to dismiss the entirety of Plaintiff's FAC under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons explained below, the Court grants in part and denies in part Defendants' motion.

**STANDARDS**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual

---

[1] In the text of her First Amended Complaint, Plaintiff refers to OHSU's "Vaccine Exception Review Panel." ECF 7, ¶ 7. Exhibit B to Plaintiff's First Amended Complaint, however, is a written communication from OHSU, and that document refers to the "Vaccine Exception Review Committee." *Id.* at 13. In this Opinion and Order, the Court will use OHSU's terminology and refer the Doe Defendants as members of OHSU's Vaccine Exception Review Committee.

allegations, a court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). A court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

Further, in a case alleging the same claim against multiple defendants, there must be specific allegations explaining what each defendant allegedly did wrong, rather than general allegations asserted against them as a group. *See Evans v. Sherman*, 2020 WL 1923176, at *3

(E.D. Cal. Apr. 21, 2020) (noting that a plaintiff who "simply lumps all defendants together" makes it "impossible for the Court to draw the necessary connection between the actions or omissions" of the various defendants); *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018) ("Plaintiffs must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole." (quotation marks and citation omitted)); *Wright v. City of Santa Cruz*, 2014 WL 5830318, at *5 (N.D. Cal. Nov. 10, 2014) ("These allegations are inadequate because they lump all Defendants together and fail to allege the factual basis for each defendant's liability.").

## BACKGROUND

### A.  COVID-19 and Vaccine Mandates for Healthcare Workers

On August 13, 2021, amid the surge in COVID-19 cases, the Governor of Oregon issued Executive Order 21-29 (the EO). In the EO, the Governor explained that the summer surge in COVID-19 infections "is imperiling the state health system's ability to manage not just COVID-19 patients, but also those who require specialized medical care after car accidents, heart attacks, and other medical emergencies" and added that "employer vaccination requirements have become an important tool" for managing the surge. The EO required that state executive-branch employees be "fully vaccinated" against COVID-19 by the later of October 18, 2021, or six weeks after the date that the Food and Drug Administration (FDA) approves a COVID-19 vaccine. The EO allowed for exceptions for individuals unable to be vaccinated due to disability, qualifying medical condition, or a sincerely held religious belief.

After the FDA approved the COVID-19 vaccine on August 23, 2021, the Oregon Health Authority (OHA) adopted similar vaccination rules. One of those rules, then-codified at Oregon

Administrative Rule (OAR) 333-019-1010, is known as the "Healthcare Order."[2] Originally

adopted on August 25, 2021, and then modified on September 1, 2021, the Healthcare Order

explained:

> Healthcare providers and healthcare staff have contact with
> multiple patients over the course of a typical day and week,
> including providers that provide care for people in their homes.
> Individuals cared for in these settings are more likely than the
> general public to have conditions that put them at risk for
> complications due to COVID-19. COVID-19 variants are running
> through the state's unvaccinated population and causing an
> increase in breakthrough cases for those who are fully vaccinated.
> This rule is necessary to help control COVID-19, protect patients,
> and to protect the state's healthcare workforce.

OAR 333-019-1010(1). Based on these concerns, the Healthcare Order provided that after

October 18, 2021, "Health care providers and healthcare staff may not work, learn, study, assist,

observe, or volunteer in a healthcare setting unless they are fully vaccinated or have provided

documentation of a medical or religious exception." OAR 333-019-1010(3)(a).[3]

---

[2] The OHA suspended OAR 333-019-1010 in mid-2023 and repealed it effective November 6,
2023.

[3] The terms "healthcare providers and healthcare staff" were defined as:

> individuals, paid and unpaid, working, learning, studying,
> assisting, observing or volunteering in a healthcare setting
> providing direct patient or resident care or who have the potential
> for direct or indirect exposure to patients, residents, or infectious
> materials, and includes but is not limited to any individual licensed
> by a health regulatory board as that is defined in ORS 676.160,
> unlicensed caregivers, and any clerical, dietary, environmental
> services, laundry, security, engineering and facilities management,
> administrative, billing, student and volunteer personnel.

OAR 333-019-1010(2)(f)(A). "Healthcare setting" was defined as:

> any place where health care, including physical or behavioral
> health care[,] is delivered and includes, but is not limited to any
> health care facility or agency licensed under ORS chapter 441
> or 443, such as hospitals, ambulatory surgical centers, birthing

In late 2021, the United States Secretary of Health and Human Services (the Secretary), who administers the Medicare and Medicaid programs, issued an interim final rule amending the existing conditions of participation in Medicare and Medicaid to add a new requirement—that facilities ensure that their covered staff are vaccinated against COVID-19. 86 Fed. Reg. 61555, 61616-27 (Nov. 5, 2021). The rule required providers to offer medical and religious exemptions and did not cover staff who teleworked full-time. *Id.* at 61571-72. A facility's failure to comply with the vaccination requirement may lead to monetary penalties, denial of payment for new admissions, and ultimately termination of participation in the programs. *Id.* at 61574. As explained by the Supreme Court, "[t]he Secretary issued the rule after finding that vaccination of healthcare workers against COVID-19 was 'necessary for the health and safety of individuals to whom care and services are furnished.'" *Biden v. Missouri*, 595 U.S. 87, 91 (2022) (citing 86 Fed. Reg. at 61561). The Supreme Court upheld the Secretary's rule as within the Secretary's authority provided by Congress. *Id.* at 93. The Supreme Court added:

> COVID-19 is a highly contagious, dangerous, and—especially for Medicare and Medicaid patients—deadly disease. The Secretary of Health and Human Services determined that a COVID-19 vaccine mandate will substantially reduce the likelihood that healthcare workers will contract the virus and transmit it to their patients.

---

> centers, special inpatient care facilities, long-term acute care facilities, inpatient rehabilitation facilities, inpatient hospice facilities, nursing facilities, assisted living facilities, residential facilities, residential behavioral health facilities, adult foster homes, group homes, pharmacies, hospice, vehicles or temporary sites where health care is delivered (for example, mobile clinics, ambulances), and outpatient facilities, such as dialysis centers, health care provider offices, behavioral health care offices, urgent care centers, counseling offices, offices that provide complementary and alternative medicine such as acupuncture, homeopathy, naturopathy, chiropractic and osteopathic medicine, and other specialty centers.

OAR 333-019-1010(2)(g)(A).

> 86 Fed. Reg. 61557-61558. He accordingly concluded that a
> vaccine mandate is "necessary to promote and protect patient
> health and safety" in the face of the ongoing pandemic. *Id.*, at
> 61613.

*Id.* In mid-2023, the Secretary issued a new rule withdrawing the vaccination requirement.

88 Fed. Reg. 36485, 36488 (June 5, 2023) (effective Aug. 4, 2023).

**B.  Plaintiff's Employment at OHSU**

Plaintiff began working for OHSU, an Oregon public corporation, as a Registered Nurse in August 2013. After the onset of the COVID-19 pandemic and the availability of COVID-19 vaccinations, OHSU mandated that Plaintiff receive a COVID-19 vaccination as a condition of continued employment. In September 2021, Plaintiff put OHSU on notice of her sincerely held religious belief that prevented her from receiving a COVID-19 vaccination. In October 2021, OHSU denied Plaintiff's request for a religious accommodation that would have exempted her from OHSU's vaccination requirement. OHSU placed Plaintiff on administrative leave on October 18, 2021, and terminated Plaintiff's employment on December 6, 2021. Plaintiff alleges that OHSU could have accommodated her religious beliefs without incurring undue hardship.

**DISCUSSION**

**A.  Plaintiff's Claim of Religious Discrimination in Employment, 42 U.S.C. § 2000e**

Plaintiff's First Claim is brought against only OHSU. Plaintiff alleges that OHSU is a covered employer and that it engaged in religious discrimination in employment in violation of 42 U.S.C. § 2000e-2(a)(1).

**1.  Legal Framework**

Under Title VII, it is unlawful for a covered employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race,

color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court recently

explained that Title VII, as originally enacted, did not spell out what it meant by discrimination

"because of . . . religion," but the Equal Employment Opportunity Commission (EEOC) soon

"interpreted that provision to mean that employers were sometimes required to 'accommodate'

the 'reasonable religious needs of employees.'" *Groff v. DeJoy*, 600 U.S. 447, 457 (2023)

(quoting 29 C.F.R. § 1605.1(a)(2) (1967)). The EEOC then adopted regulations that "obligated

employers 'to make reasonable accommodations to the religious needs of employees' whenever

that would not work an 'undue hardship on the conduct of the employer's business.'" *Id.*

(quoting 29 C.F.R. § 1605.1 (1968)).

In 1970, the Sixth Circuit held that Title VII as then written did not require an employer

"to accede to or accommodate" an employee's religious practice because that "would raise

grave" Establishment Clause questions. *Dewey v. Reynolds Metals Co.*, 429 F.2d 324, 334 (6th

Cir. 1968), *aff'd by an equally divided court*, 402 U.S. 689 (1971). Responding to *Dewey* and

another similar decision, Congress amended Title VII in 1972 to provide:

> The term "religion" includes all aspects of religious observance
> and practice, as well as belief, unless an employer demonstrates
> that he is unable to reasonably accommodate to an employee's or
> prospective employee's religious observance or practice without
> undue hardship on the conduct of the employer's business.

42 U.S.C. § 2000e(j); *Groff*, 600 U.S. at 458.

In *Groff*, the Supreme Court also clarified what Title VII requires in this area. As

explained by the Court, "showing 'more than a de minimis cost,' as that phrase is used in

common parlance, does not suffice to establish 'undue hardship' under Title VII." *Groff*, 600

U.S. at 468. Instead, when an employer asserts undue hardship based on cost, the employer

"must show that the burden of granting an accommodation would result in substantial increased

costs in relation to the conduct of its particular business." *Id.* at 470. Further, "courts must apply

the test in a manner that takes into account all relevant factors in the case at hand, including the

particular accommodations at issue and their practical impact in light of the nature, size and

operating cost of an employer." *Id.* at 470-71 (cleaned up).

### 2. Application

In support of their motion to dismiss, Defendants state: "Regardless of whether Plaintiff

can successfully establish a prima facie case under Title VII, Plaintiff cannot prevail at the

'undue hardship' prong." ECF 9, at 5. Defendants note that "undue hardship" also includes

increased safety and liability hazards in the workplace. *Id.* at 6 (citing *Bhatia v. Chevron U.S.A.,*

*Inc.*, 734 F.2d 1382, 1383-84 (9th Cir. 1984)). Defendants add:

> Plaintiff worked in person as a registered nurse at OHSU. Am.
> Compl. ¶ 10. It is undisputed (or at least not subject to reasonable
> dispute) that the essential functions of her job required her to
> regularly work with, touch, and be in close proximity to patients
> (in addition to coworkers and visitors). Plaintiff does not allege
> that she could have performed her job responsibilities remotely.
> Nor can Plaintiff reasonably dispute that COVID-19 poses a health
> and safety risk to patients and that COVID-19 vaccination reduces
> the risk of infection and transmission. Accordingly, if Plaintiff
> could not become vaccinated against COVID-19, OHSU could not
> have reasonably accommodated her. Allowing an unvaccinated
> worker like Plaintiff to present health and safety hazards for
> patients and coworkers would, as a matter of law, create an "undue
> hardship" for OHSU; absent vaccination, there is no adequate
> reasonable accommodation that could serve as a viable substitute.

ECF 9, at 6-7.

In support of this conclusion, Defendants cite the district court's findings of fact and

conclusions of law in a decision denying a motion for preliminary injunction sought by an

association of unvaccinated employees who were denied religious or medical exemptions from

their hospital employer's mandatory COVID-19 vaccination policy and alleged violations of

Title VII, among other claims.[4] *Id.* at 7 (citing *Together Emps. v. Mass. Gen. Brigham Inc*., 573

F. Supp. 3d 412, 437 (D. Mass. 2021), *aff'd*, 32 F.4th 82 (1st Cir. 2022)). In that case, United

States District Judge F. Dennis Saylor IV, stated:

> On the record before the Court, it appears that MGB has established a reasonable likelihood of success on its contention that providing plaintiffs an exemption from the vaccination policy would impose an undue hardship. MGB is essentially in the business of providing medical care to patients, many of whom are medically vulnerable to COVID-19 infection. It contends that permitting the requested accommodations would create a greater risk of COVID-19 infection in its facilities. (Klompas Dec. ¶ 29). That heightened risk, in turn, would undermine its "responsibility to maintain the highest level of patient care" and "protect patients, staff and visitors." (Klompas Dec. ¶ 19). It would also place "additional stresses on [defendant's] already overburdened system created by the highly contagious Delta variant." (*Id.*).
>
> *After consulting with experts, MGB determined that the alternatives to vaccines, such as masking, periodic testing, and social distancing, would impose an undue hardship.* Specifically, it concluded that (1) social distancing from other staff, patients, and visitors is not always practicable; (2) testing is inadequate because, among other reasons, it misses infections on days not tested and conveys a false sense of security to healthcare workers; and (3) vaccinated individuals who become infected with COVID-19 are "at least 50% less likely to transmit infection compared to unvaccinated people." (Klompas Dec. ¶ 29). The policy also was designed to minimize staff absences, so that defendant's workforce could continue to combat the COVID-19 pandemic. (Klompas Dec. ¶ 35). And MGB has a strong interest in maintaining public trust and confidence in its ability to provide a reasonably safe environment for its patients, and to assure the public that they may seek health care in its facilities without an unnecessary risk of infection.

*Id.* at 435-36 (emphasis added) (footnotes omitted). Judge Saylor also rejected the plaintiffs'

argument that the defendant hospital "would not be unduly burdened because it allows

---

[4] When granting or refusing a motion for a preliminary injunction, a court must make findings of fact and state conclusion of law. Fed. R. Civ. P. 52(a)(2).

unvaccinated patients into its hospitals, and the addition of a few unvaccinated employees would not materially alter the overall risk." *Id.* at 436. Judge Saylor explained:

> [U]nvaccinated patients implicate substantially different concerns than unvaccinated employees. MGB physicians have an ethical duty to treat all patients requiring medical care, including the unvaccinated. *See* AMA, Code of Medical Ethics Op. 1.1.2 (stating that physicians "have an ethical obligation to provide care in cases of medical emergency" and may not decline patients solely based on "infectious disease status"). MGB cannot simply turn away unvaccinated patients. But even if it must accept those patients, it is entitled to manage the risk of infectious disease as best it can. And, in any event, the issue is whether granting employees an accommodation from the COVID-19 vaccine would impose an undue hardship; the vaccination status of defendant's patients or visitors is not material.

*Id.*

The Court may reach similar factual conclusions at the appropriate stage of the litigation based on an appropriate factual record. But a motion to dismiss under Rule 12(b)(6) is not that stage. Plaintiff has alleged that "Defendant OHSU could have accommodated Plaintiff's religious beliefs without incurring undue hardship." ECF 7, ¶ 26 (FAC). As noted, a court need not credit a plaintiff's legal conclusions that are couched as factual allegations. *Iqbal*, 556 U.S. at 678-79. Thus, the Court may properly disregard Plaintiff's conclusory assertion that OHSU could have accommodated her religious beliefs without incurring undue hardship. Nevertheless, the absence of an undue hardship on a defendant is not an essential element of a plaintiff's claim under Title VII; it is an affirmative defense.

Defendants themselves acknowledge as much. In their motion to dismiss, Defendants explain that to establish a prima facie case under Title VII based on an employer's failure to accommodate an employee's religious conflict, a plaintiff must show that "(1) she had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) she informed her employer of the belief and conflict; and (3) the employer threatened her or subjected her to

discriminatory treatment, including discharge, because of her inability to fulfill the job requirements." ECF 9, at 5 (quoting *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998)). Defendants then state: "If the plaintiff meets those elements, the burden shifts to the employer to show either that it initiated good-faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Id.* (cleaned up). Thus, Defendants acknowledge that the question of undue hardship is an affirmative defense.

The Ninth Circuit has explained that "[o]rdinarily, affirmative defenses . . . may not be raised on a motion to dismiss except when the defense raises no disputed issues of fact." *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018); *see also U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019) (quoting *Lusnak*). In *Monex*, the Ninth Circuit added that "we can consider an affirmative defense on a motion to dismiss when there is some obvious bar to securing relief on the face of the complaint." *Id.* (quotation marks omitted). "In other words, dismissal based on an affirmative defense is permitted when *the complaint* establishes the defense." *Id.* (emphasis in original).[5] As noted, Plaintiff alleges in her FAC that OHSU "could have accommodated Plaintiff's religious beliefs without incurring undue hardship." Even if the Court were to disregard that allegation as merely conclusory, Plaintiff's complaint does not *itself* establish the affirmative defense of undue hardship.

This does not mean, however, that Defendants must submit to time-consuming and expensive discovery before filing a motion for summary judgment. The Court does not limit the

---

[5] As discussed below, the affirmative defense of qualified immunity may be resolved on a motion to dismiss under Rule 12(b)(6) when there are no disputed issues of material fact.

parties to a single motion for summary judgment; nor does the Court require a party to wait until

discovery has closed, if that party believes it has a meritorious argument for summary judgment.[6]

Under the facts and allegations here, the Court will consider the merits of any argument based on

"undue hardship" after a well-supported motion for summary judgment has been filed.

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's First Claim under

Rule 12(b)(6).[7]

---

[6] Although Rule 56(d) of the Federal Rules of Civil Procedure provides a party opposing a
motion for summary judgment with certain procedural rights, which may increase the cost or
delay to the movant to some extent, those rights are available only if the nonmovant shows by
affidavit or declaration "for specified reasons" why "it cannot present facts essential to justify its
opposition." Fed. R. Civ. P. 56(d). Further, when a motion for summary judgment is supported
by expert declarations and the nonmovant files contrary declarations, that is *not necessarily* the
end of the matter at summary judgment. As part of a court's summary judgment determination,
either party may file a motion to exclude an opponent's proffered expert testimony under
Rule 702 of the Federal Rules of Evidence. Further, "[i]t is the proponent of the expert who has
the burden of proving admissibility." *Lust By & Through Lust v. Merrell Dow Pharms., Inc*., 89
F.3d 594, 598 (9th Cir. 1996). Also, "[t]o carry out its gatekeeping role, a district court must find
that an expert's testimony is reliable—an inquiry that focuses not on what the experts say, or
their qualifications, but what basis they have for saying it. A district court cannot be silent about
reliability when challenged." *United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022)
(cleaned up).

[7] The same analysis applies to Defendants' argument under OAR 333-019-1010(4). That rule
provided:

> Employers of healthcare providers or healthcare staff, contractors
> and responsible parties who grant a medical or religious exception
> to the vaccination requirement in this rule *must take reasonable
> steps* to ensure that unvaccinated healthcare providers and
> healthcare staff are protected from contracting *and spreading*
> COVID-19.

OAR 333-019-1010(4) (emphasis added). OHSU argues that no such steps are possible regarding
a nurse with Plaintiff's patient care responsibilities or, alternatively, even if such steps were
possible compliance with this rule would create an undue hardship for OHSU. Again, OHSU
may be correct, and that may be the Court's eventual ruling on summary judgment, depending on
the factual record. OHSU's argument, however, relies on the affirmative defense of undue
hardship, and, as noted, a motion to dismiss under Rule 12(b)(6) is not the proper procedural
vehicle to make that argument.

**B.  Plaintiff's Claim of Deprivation of Civil Rights, 42 U.S.C. § 1983**

Plaintiff's Second Claim is brought against only the individually named Defendants and the two Doe Defendants, who, at all relevant times, were members of OHSU's Board of Directors and its VERC, respectively. Plaintiff alleges that these Defendants deprived Plaintiff of her constitutional rights under the religion clauses of the First Amendment and thus are liable under 42 U.S.C. § 1983. In her FAC, Plaintiff asserts that these Defendants, acting under color of state law because OHSU is an Oregon Public Corporation, "expressed overt hostility to the religious beliefs of Plaintiff by declaring Plaintiff's religious beliefs 'personal moral choices and/or conscientious objection rather than a tenet of a religious faith.'" FAC ¶ 34. In her FAC, Plaintiff also states: "Under 42 USC § 1983, state actors like the Board Defendants and Does 1 and 2 forfeit their qualified immunity from liability when, acting in their official capacities, they deliberately infringe on constitutional rights." *Id.* ¶ 33. This assertion, however, is not a well-pleaded factual allegation. Instead, it is a legal conclusion, which the Court need not credit. *See Iqbal*, 556 U.S. at 678-79. It also misstates the law of qualified immunity.

**1.  Legal Framework**

"Qualified immunity is an affirmative defense that must be raised by a defendant." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)). A defendant, however, may assert qualified immunity in a motion to dismiss under Rule 12(b)(6) if the court "can determine, based on the complaint itself, that qualified immunity applies." *O'Brien*, 818 F.3d at 936 (quoting *Groten*). This principle was most recently applied by the Ninth Circuit in *Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023). When considering whether qualified immunity applies, however, the court must resolve all factual disputes in favor of the party asserting the injury. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013).

"The doctrine of qualified immunity protects government officials from liability for civil damages." *Wood v. Moss*, 572 U.S. 744, 745 (2014); *accord Krainski v. Nevada ex rel. Bd. of Regents*, 616 F.3d 963, 968 (9th Cir. 2010). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Whether qualified immunity can be invoked turns on the objective legal reasonableness of the official's acts. And reasonableness of official action, in turn, must be assessed in light of the legal rules that were clearly established at the time the action was taken." *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) (cleaned up). "The privilege is an *immunity from suit* rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (emphasis in original) (quotation marks omitted). The Supreme Court also has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). But qualified immunity is only an immunity from damages; it is not an immunity from declaratory or injunctive relief. *See L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993).

In *Saucier*, the Supreme Court outlined a two-step process for determining the applicability of the qualified immunity doctrine. 533 U.S. at 200. The first step is to determine "whether a constitutional right would have been violated on the facts alleged." *Id.* The second step is to determine "whether the right was clearly established." *Id.* The constitutional issue, however, need not be addressed first in every case. *Pearson*, 555 U.S. at 227. "Regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by

the plaintiff was not clearly established or the officer could have reasonably believed that his

conduct was lawful." *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991).

      To determine whether a government official's conduct violates clearly established law, "a

court must ask whether it would have been clear to a reasonable officer that the alleged conduct

was unlawful in the situation he confronted." *Abbasi*, 582 U.S. at 152 (quotation marks omitted).

To be clearly established, "[i]t is not necessary . . . that the very action in question has previously

been held unlawful. That is, an officer might lose qualified immunity even if there is no reported

case directly on point. But in the light of pre-existing law, the unlawfulness of the officer's

conduct must be apparent." *Id.* at 151 (citations and quotation marks omitted). "The 'clearly

established' requirement 'operates to ensure that before they are subject to suit, [government

officials] are on notice their conduct is unlawful.'" *Eng v. Cooley*, 552 F.3d 1062, 1075 (9th

Cir. 2009) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)) (alteration in original).

      Thus, the key inquiry in determining whether an officer has qualified immunity is

whether the officer had "fair warning" that his conduct was unconstitutional. *Hope*, 536 U.S.

at 741; *see also Saucier*, 533 U.S. at 202 (noting that the law need not be a "precise formulation

of the standard" as long as "various courts have agreed that certain conduct is a constitutional

violation under facts not distinguishable in a fair way from the facts presented in the case at

hand"); *Ellins*, 710 F.3d at 1064 ("Rather, the relevant question is whether the state of the law at

the time gives officials fair warning that their conduct is unconstitutional."(quotation marks

omitted); *Bull v. City & Cnty. of S.F.*, 595 F.3d 964, 1003 (9th Cir. 2010) (en banc) ("[T]he

specific facts of previous cases need not be materially or fundamentally similar to the situation in

question."). A court in this circuit first looks to binding precedent from the Supreme Court or the

Ninth Circuit. *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004). After that, "in the

absence of binding precedent, [courts] look to whatever decisional law is available to ascertain whether the law is clearly established for qualified immunity purposes, including decisions of state courts, other circuits, and district courts." *Id.* (quotation marks omitted). Further, the plaintiff bears the burden of showing that the right was clearly established at the time of the alleged violation. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

### 2. Application

As alleged by Plaintiff in her FAC, the members of the OHSU Board of Directors established OHSU's "institutional strategy and policy concerning religious accommodations in connection with its COVID-19 vaccination mandates," including the creation of OHSU's VERC. FAC ¶ 7. As also alleged by Plaintiff, the Doe defendant members of the VERC "were directly responsible for making the decision to deny Plaintiff's religious accommodation and tell Plaintiff she did not possess a sincerely held religious belief." *Id.* ¶ 8. In denying Plaintiff's request for religious accommodation, OHSU told Plaintiff that her request received "two independent assessments by members of the Vaccine Exception Review Committee." *Id.* ¶ 14. Plaintiff attaches to her FAC as Exhibit B a copy of the communication that she received denying her request for a religious exception to OHSU's vaccination policy. FAC, at 13-14. She also attached to her FAC as Exhibit C a copy of OHSU's "Criteria for vaccine policy exceptions," as of September 22, 2021. FAC, at 15-17. For purposes of this qualified immunity analysis, the Court accepts Plaintiff's factual allegations and resolves all factual disputes in favor of Plaintiff.

Nevertheless, in her response to Defendants' motion to dismiss, Plaintiff provides no case authority from any court, let alone the Supreme Court or the Ninth Circuit, sufficient to show that any of the individually named Defendants or either of the two Doe Defendants would have had "fair warning" that their conduct, as alleged by Plaintiff, was unconstitutional. Plaintiff states that "[l]aws targeting religious beliefs as such are never permissible." ECF 15, at 16 (citing

*Church of Lukumi Babalu Aye, Inc., v. City of Hialeah*, 508 U.S. 520, 533 (1993)). That

proposition, however, is simply too general to place the individually named Defendants and the

Doe Defendants on notice that what they were doing was clearly unconstitutional. As previously

noted, "the relevant question is whether the state of the law at the time gives officials fair

warning that their conduct is unconstitutional." *Ellins*, 710 F.3d at 1064 (cleaned up).

In a thoughtful and well-reasoned decision on similar facts, United States District Judge

Karin Immergut noted in her discussion of qualified immunity that "government actors may still

be on notice that their conduct violates established law in novel factual circumstances in obvious

or egregious cases." *MacDonald v. Or. Health & Sci. Univ.*, 2023 WL 5529959, at *11 (D. Or.

Aug. 28, 2023) (citing *Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020); *Hope*, 536 U.S. at 741;

*Giebel v. Sylvester*, 244 F.3d 1182, 1189 (9th Cir. 2001)). Judge Immergut continued: "This is

not such an obvious or egregious case where, notwithstanding the lack of judicial guidance, the

Board and VERC Defendants' conduct was so clearly violative of a constitutional right that they

should have known their actions were unconstitutional." *Id.* [8]

---

[8] Plaintiff relies primarily on two cases when arguing that the actions of the individual
Defendants violated "clearly established law." The first case is *Bushouse v. Loc. Union 2209,
United Auto., Aerospace & Agric. Implement Workers of Am.*, 164 F. Supp. 2d 1066 (N.D. Ind.
2001). In that case, the district court held that a union's request that an employee produce
independent corroboration that his beliefs were sincerely held and religious in nature did not
violate Title VII's religious accommodation provision. The district court explained, however,
that "[i]n the context of religious discrimination claims, courts have . . . been reluctant to
scrutinize an individual's religious beliefs and have not required that the beliefs in question be
based upon organized or recognized teachings of a particular sect." *Id.* at 1074. That statement is
too general to show that the individual Defendants here had "fair warning" that their conduct was
unconstitutional. The second case is *Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021). In that case,
teachers and administrators sued New York City and its officials, alleging that the city's
COVID-19 vaccine mandate for individuals who worked in city schools violated the Free
Exercise Clause. The Second Circuit held that the plaintiffs had demonstrated a likelihood of
success on their as-applied challenge and that "denying an individual a religious accommodation
based on someone else's publicly expressed religious views . . . runs afoul of the Supreme
Court's teaching that it is not within the judicial ken to question the centrality of particular

As previously noted, a plaintiff bears the burden of making a showing that the right was clearly established at the time of the alleged violation. *Sorrels*, 290 F.3d at 969. Plaintiff has not satisfied her burden. Accordingly, the Court dismisses Plaintiff's Second Claim under the doctrine of qualified immunity.

### C.  Plaintiff's Request for Prospective Declaratory Relief

Plaintiff also seeks declaratory relief from the Court. In her FAC, Plaintiff asks the Court to "declare that the Board Defendants' policy proclaiming which beliefs are worthy of religious exceptions and which beliefs were not violates the U.S. Constitution's F[r]ee Exercise Clause." FAC ¶ 40. As previously noted, qualified immunity is only an immunity from damages; it is not an immunity from declaratory or injunctive relief. *L.A. Police Protective League*, 995 F.2d at 1472.

Defendants originally moved to dismiss Plaintiff's request for declaratory relief on the ground that Plaintiff appeared to be seeking retrospective relief and that such relief is barred by the Eleventh Amendment. Defendants stated that although prospective declaratory relief may be available under § 1983, "it is well settled that the Eleventh Amendment prohibits declaratory relief insofar as it concerns only past violation of law." ECF 9, at 16 (citing *Green v. Mansour*, 474 U.S. 64, 72-73 (1985)).

In her response, Plaintiff does not argue that she is permitted to seek retrospective declaratory relief here. Instead, the entirety of Plaintiff's response to Defendants' argument on the unavailability of declaratory relief in this case is as follows:

---

beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Id.* at 168 (cleaned up). Not only did *Kane* not involve hospital employees, but the Second Circuit decided the case in November 2021. Thus, the decision does not assist Plaintiff in showing that the individual Defendants had fair warning that their conduct was unconstitutional at the time they engaged in their actions.

> Plaintiff is requesting the court *prospectively* declare the Board
> Defendants may not enact a policy proclaiming which beliefs are
> worthy of First Amendment protection and which are not because
> it is unconstitutional. *While not alleged*, Plaintiff believes the
> unlawful conduct she complains of is continuing at OHSU and she
> is asking the court to declare such conduct unconstitutional *so
> other OHSU employees with religious beliefs do not have to
> experience what Plaintiff experienced*.

ECF 15, at 19 (emphasis added).

Generally, one may not claim standing to vindicate the constitutional rights of a third party. *See Singleton v. Wulff*, 428 U.S. 106, 114 (1976). Although the law recognizes some limited exceptions to this rule, Plaintiff's FAC lacks any factual allegations sufficient to show that she has third-party standing to assert claims of other OHSU employees. Indeed, a former employee, without more, typically lacks standing to request prospective declaratory relief to aid current employees, even if the same practices about which the former employee complained are continuing. *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 865 (9th Cir. 2017) ("Given that Bayer is no longer employed with Neiman Marcus and has produced no evidence to suggest he plans to seek employment with Neiman Marcus again, there is no basis upon which to conclude he has a reasonably certain need for prospective relief pertaining to its future employment practices."). Accordingly, the Court dismisses Plaintiff's request for declaratory relief for lack of standing.

## CONCLUSION

The Court GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss Plaintiff's First Amended Complaint (ECF 9). Regarding Defendants' challenge to Plaintiff's First Claim, alleging religious discrimination in employment, the Court finds that OHSU's arguments about undue hardship must await a motion for summary judgment, at which time the Court may consider matters outside the pleadings and, if necessary, motions to exclude expert

testimony. Regarding Defendants' challenge to Plaintiff's second claim brought under § 1983 against the individual Defendants, the Court dismisses that claim under the doctrine of qualified immunity. Regarding, Defendants' challenge to Plaintiff's request for prospective declaratory relief, the Court dismisses that request for lack of standing. If Plaintiff believes she can cure any of the deficiencies identified herein, Plaintiff may file a second amended complaint within two weeks of the date of this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 20th day of September, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge